# EXHIBIT A


ADA FOR ASSISTANCE CALL 423-798-1760

| STATE OF TENNESSEE 3rd JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS**** | DOCKET NUMBER CH-2016-CW-116 |
|---|---|---|
| Plaintiff | | Defendant |
| Erika Miller & her minor child, Kinison Miller | | DraftKings, Inc, a foreign corporation |

TO: (NAME AND ADDRESS OF DEFENDANT)

DraftKings, Inc.

c/o Jason Robins

25 Franklin Street, 26th Floor

Boston, Massachusetts 02110

Method of Service:
- ☐ Shelby County Sheriff
- ☒ Private Process Server
- ☐ Out of County Sheriff*
- ☐ Secretary of State*
- ☐ Comm. Of Insurance*
- ☐ Certified Mail
- ☐ Other
  *Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the Complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

Attorney for Plaintiff or Plaintiff if filing Pro Se:
(Name, address & telephone number)

Frank L. Watson, III

253 Adams Avenue

Memphis, TN 38103

(901) 529-7996

ISSUED 1st of April, 2016

Kay Solomon Armstrong, Clerk and Master

By: Beth Norton, DCM
    Deputy Clerk & Master

101 S. Main Street, Suite 104, Greeneville, TN 37743

Came to hand ____ day of ____, 20 ____

Sheriff

TO THE SHERIFF:

**CERTIFICATION (IF APPLICABLE)**

I, Donna L. Russell, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case.

Donna L. Russell, Clerk & Master

By: _____
    D. C. & M.

**Submit one original and one copy for each defendant to be served.
♿ If you need assistance or accommodations because of a disability, please call the ADA Coordinator at (901)222-2341.

**Notice of Personal Property Exemption:**
TO THE DEFENDANT(S):
  Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

IN THE CHANCERY COURT OF GREENE COUNTY, TENNESSEE
FOR THE THIRD JUDICIAL DISTRICT AT GREENEVILLE

| | |
|---|---|
| ERICA MILLER, for the use and benefit of herself or, alternatively, KINISON MILLER, her minor child, <br><br> PLAINTIFFS, <br><br> v. <br><br> DRAFTKINGS, INC., a foreign corporation <br><br> DEFENDANT. | No. CH- 2016-CV-116 <br><br> **COMPLAINT FOR RECOVERY OF GAMBLING AND ILLEGAL LOTTERY LOSSES PURSUANT TO** TENN. CODE ANN. § 29-19-105 <br><br> (Hon. Chancellor Douglas T. Jenkins) <br><br> **JURY TRIAL DEMANDED** |

TO THE HONORABLE CHANCELLOR DOUGLAS T. JENKINS:

Plaintiff Erica Miller, for the use and benefit of herself, or, alternatively, Kinison Miller, her minor child, brings this action against Defendant DraftKings, Inc. to recover gambling and lottery losses and would allege as follows:

I.

## NATURE OF THE ACTION

1. This is individual action brought by the Plaintiff Erica Miller, for the use and benefit of herself or, alternatively, Kinison Miller, her minor child, pursuant to TENN. CODE

ANN. § 29-19-105, for the Recovery of Gambling and Wagering Losses and Lottery Losses incurred by her spouse pursuant in order to remedy Defendant's wholesale promotion and operation of gambling, wagering and illegal lotteries in Tennessee in violation of express Tennessee statutory law and Tennessee's Constitution.

## II.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action by virtue of TENN. CODE ANN. § 16-10-101 *et seq.*

3. This Court has personal jurisdiction over Defendant DraftKings, Inc., pursuant to TENN. CODE ANN. §§ 20-2-214(1) and (2) and 20-2-223(1), (3) and/or (4) on the grounds that the claims asserted against it arise from its transaction of business within Tennessee and on the grounds that it has committed tortious acts within Tennessee. Furthermore, Defendant DraftKings, Inc.'s contacts and actions directed toward Tennessee warrant the exercise of personal jurisdiction pursuant to TENN. CODE ANN. § 20-2-225(2).

4. Venue is proper in this judicial district pursuant to TENN. CODE ANN. § 20-4-101(a) on the grounds that the cause of action arose in Shelby County, Tennessee. Venue is also proper in this judicial district pursuant TENN. CODE ANN. § 16-11-115(3) and (4) on the grounds that this county is location where the services and/or activities were rendered.

## III.

## THE PARTIES

5. Plaintiff Erica Miller (hereinafter referred to as "Plaintiff") is an individual resident of Greene County, Tennessee. Plaintiff is the mother of Kinison Miller, her minor child and the spouse of Kenneth Miller, a Tennessee resident of Greene County, Tennessee who

2

engaged in gambling and unlawful lottery contests promoted and operated by Defendant DraftKings, Inc.

6. Defendant DraftKings, Inc. (hereinafter referred to as "DraftKings") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 225 Franklin Street, 26th Floor, Boston, Massachusetts 02110. Service of process can be obtained on DraftKings through its registered agent for service of process, Jason Robins, located 25 Franklin Street, 26th Floor, Boston, Massachusetts 02110.

IV.

## FACTUAL ALLEGATIONS

A. **Summary of Allegations**

7. Defendant DraftKings operates a website known as "DraftKings.com" which offers to Tennessee residents daily and weekly fantasy sports gambling contests for cash prizes in major professional sports, such as the National Football League, the National Basketball Association, the National Hockey League and Major League Basketball as well as in college football and basketball. Specifically, acting like any Las Vegas sports "bookie," DraftKings provides a forum where Tennessee customers can make propositional wagers on the outcomes of the actual performance of specific athletes and sports teams on a daily basis, charging a commission or "rake" on all wagers made and, at times, risking its own money in these wagers.

8. Because DraftKings' customers are betting on the outcome of athletic feats achieved by sports teams and players over which they have no control, DraftKings' activities constitute the unlawful operation of gambling activities and illegal lotteries within the State of Tennessee. Regardless of the alleged amount of "skill" that DraftKings attributes to the gaming that it promotes, Tennessee law expressly defines "gambling" to mean "risking anything of value for a profit whose return is <u>to any degree contingent on chance</u>, or any games of chance

3

associated with casinos, including, but not limited to, slot machines, roulette wheels and the like." *See*, TENN. CODE ANN. § 39-17-501(1)(emphasis added). As a result, DraftKings has clearly engaged in gambling in Tennessee, which is expressly prohibited under Tennessee law.

9. Further, by charging fees for a chance to win the gaming contests promoted by it (and at times risking its own assets to cover such contests), DraftKings has operated an illegal lottery in Tennessee. Under Tennessee law, a "lottery" means "the selling of anything of value for chances on a prize or stake." TENN. CODE ANN. § 39-17-501(5). Again, then, regardless of the alleged degree of skill that it attributes to the gaming contest created and promoted by DraftKings, DraftKings has engaged in the operation of an illegal lottery in Tennessee (which expressly prohibited by Tennessee law and Article XI, Section 5 of Tennessee's Constitution) because chance is clearly an element affecting the outcome in these contests.

### B. The Gaming Contests Created, Promoted and Operated by DraftKings Clearly Involve the Risk of Monetary Sums for a Profit Whose Return is to "Any Degree Contingent Upon Chance."

10. DraftKings has created an on-line betting website by devising a game that awards points based upon the performance of various professional and college athletes and teams in specific games on specific days. DraftKings charges an entry fee and then accepts wagers from bettors for these sporting event contests, from which it deducts a commission or "rake" in an amount of approximately 9%.

11. With respect to each sporting event contest, DraftKings determines in advance of each contest which athletes and sport teams its betting customers can select to bet on and assigns a "handicap" (i.e., similar to a betting point spread) based upon the perceived potential of these actual athletes and teams to score the points. The charging of entries fees and a commission on the dollars wagered by its bettors is the primary basis of DraftKings' revenues; thus, the revenues to DraftKings largely depend upon the price of the entry fee for each contest as well as the total

4

dollars wagered by the bettors in each contest.

12. However, DraftKings also frequently guarantees a certain amount will be paid in prize pool winnings for a given sporting contest and, when necessary, covers the difference for the bettors between the guaranteed prize amount and the sum total of entry fees and/or total amounts wagered. The difference between the entry fees and amounts wagered and the guaranteed prize money is known as the "overlay." In situations where an overlay is needed from DraftKings, DraftKings risks its own assets in the gambling ventures it promotes and, thus, has a significant incentive to attract as many bettors as possible in order avoid paying out its own money to cover the overlay.

13. Once bettors on DraftKings' website have wagered their sums by selecting a given athlete or team, the bettor has no ability to control the outcome of the betting contest. Specifically, DraftKings' bettors have no ability to control how many points their selected athlete or teams will receive from the actual athlete's or team's performance. Instead, only the actual athlete players and teams in the underlying sporting events control their own performances, and even then, these actual athlete and teams are subject to a number of chance variables, such as "bad" officiating, illegal contact, sickness, injury, weather conditions, and any number of other variables well beyond the actual athlete or sporting team's own control.

14. As a result, after DraftKings bettors place their bet by setting their final lineups, they have no ability to influence the outcome of the actual sporting event game. At that point, the bettors wait to see what happens based upon the performance of the actual players and teams selected.

15. DraftKings erroneously claims that the dominant factor for successful betting through its website is the level or amount of "skill" employed by its customers in best predicting

5

Case 2:16-cv-00103-HSM-MCLC Document 2-2 Filed 04/29/16 Page 7 of 15 PageID #: 16

which athletes and teams will score the most points. DraftKings, however, eliminates almost the entire element of skill by establishing a handicap (similar to a point spread) for the limited number of athletes it determines can be used for a particular wagering event. By establishing a "spread" for each athlete and limiting the number of athletes the bettors can use, bettors are engaging in a gambling scheme predominately based upon chance.

16. Regardless of whether the gaming scheme concocted by DraftKings is characterized as predominately one of "skill" or "chance," however, it is well established under Tennessee law that DraftKings is engaged in the promotion and operation of a gambling enterprise because its activities easily encompass "risking anything of value for a profit whose return is <u>to any degree contingent on chance</u>..." as defined TENN. CODE ANN. § 39-17-501(1). Thus, unlike other states' laws that define gambling to be only those activities in which chance predominates, no such analysis is applicable under Tennessee law -- where any degree of chance is involved, gambling is established.

17. Tennessee Attorney Generals have consistently ruled that any gaming device like that concocted by DraftKings is "gambling" when <u>any degree</u> of chance is present in the game. *See*, Op. Tenn. Att'y. Gen. No. 05-159 (Legality of Texas Hold' Em Poker Tournaments with Jackpot Price, Oct. 14, 2005)(ruling that poker tournaments charging an admission fee to play "Texas Hold' Em" for a chance to win a prize constituted "gambling" as defined under TENN. CODE ANN. § 39-17-501(1) regardless of the skill involved and was unlawful); Op. Tenn. Att'y. Gen. No. 06-046 (Legality of Leasing Equipment for and Conducting Poker Tournaments, Mar. 10, 2006)(ruling that leasing equipment for and conducting poker tournaments that charge an admission fee to play "Texas Hold' Em" while being designated "for entertainment purposes only" constitutes "gambling" in Tennessee and is unlawful); Op. Tenn. Att'y. Gen. Opinion No. 99-084 (Legality of Fishing Tournament Wherein Entrants Pay Fees With an Opportunity to

6

Receive Cash and Other Prizes, Apr. 5, 1999)(holding that fishing tournament in which participants must pay entry fees for the possibility to receive cash and other prizes for catching specifically designated fish was "gambling" despite skill involved because it involve a degree of chance).

### C. The Gaming Contests Created, Promoted and Operated by DraftKings Also Clearly Constitute an Illegal Lottery.

18. Based upon the facts alleged herein, DraftKings also promotes, operates and manages an illegal lottery in violation of Tennessee's Constitution and Tennessee statutory law.

19. Pursuant to TENN. CODE ANN. § 39-17-501(5), a "lottery" means "the selling of anything of value for chances on a prize or stake." The three elements of a lottery are: consideration, prize and chance. As alleged above all three elements are present with respect to DraftKings' gaming. First, Plaintiff and all bettors pay money to DraftKings for the ability to participate in the gaming contests. Second, Plaintiff and all bettors are offered a monetary prize which, if won, would greatly exceed the amount wagered and paid to DraftKings.

20. Lastly, there clearly is an element of chance with respect to DraftKings' gaming website. Once again, Tennessee Attorney Generals and Tennessee law holds that it is the particular character of the game -- and not the skill or lack of skill of an individual participant that determines whether the game at issue is one of chance or skill. *See*, Op. Tenn. Att'y. Gen. No. 05-159 (Legality of Texas Hold'em Poker Tournaments with Jackpot Price, Oct. 14, 2005)(ruling that poker tournaments charging an admission fee to play "Texas Hold'Em" for a chance to win a prize constituted a "lottery" as defined under TENN. CODE ANN. § 39-17-501(5) despite the alleged skill involved in playing live poker); Op. Tenn. Att'y. Gen. Opinion No. 94-127 (Video Poker Machines as Lotteries, Nov. 1, 1994)(holding that video poker, although it involves skill, is a game of chance and hence a lottery).

7

21.     As alleged above, DraftKings' bettors can acquire and exercise the all the knowledge in the world as to which actual athlete and team may a better performer over other athletes and teams but this skill (while it may increase the odds of winning -- though studies show that it does not) ultimately does not determine the outcome -- instead, it is only the actual athlete and sporting team that have any semblance of control of the actual outcome, and even these actual sporting participants are subject to chance. DraftKings' gambling scheme clearly involve a significant degree of chance because an individual athlete's performance will always be affected by material elements of chance that affect scoring and winning outcomes including variables such as player injury, player error, weather conditions, controversial officiating, suspension, or other off field circumstances and other conditions well beyond the control of the actual athlete or team. DraftKings' bettors have no measure of control over all of the variables that affect the performance of the college and professional athletes that they select, and, thus, DraftKings has, in addition to engaging in gambling, promoted and conducted an illegal lottery in Tennessee.

### D.     Plaintiff Never Became a Registered User of DraftKings.com and, Thus, DraftKings' Purported Contractual Terms Concerning Arbitration Are Irrelevant to this Complaint.

22.     TENN. CODE ANN. § 29-19-101 provides:

> "All contracts founded, in whole or in part, on a gambling or wagering consideration, shall be void to the extent of such consideration."

See, TENN. CODE ANN. § 29-19-101.

23.     Additionally, TENN. CODE ANN. § 39-17-501(1) provides that "Gambling is contrary to the public policy of this State ..." Under Tennessee law, then, "when a contract is void, the law treats it as if it never came into existence." *Isbell v. Hatchett*, 2015 Tenn. App. LEXIS 81, *20-22 (Tenn. Ct. App. Feb. 23, 2015).

8

24. DraftKings' website contains a "Terms of Use" section which DraftKings employs to purportedly bind its customers before they are permitted to utilize and bet on its website. As a result, this provision is part and parcel of the gambling and illegal lottery contracts entered into by the gamblers (*i.e.* players) on DraftKings.com. Because the Terms of Use constitutes a contract founded in whole or in part, on gambling or wagering, all of DraftKings' purported contractual provisions, including those calling for binding arbitration, appear to be void, against public policy and of no effect.

25. The legality and enforceability of the Terms of Use contained on DraftKings.com, however, are of no moment to this action and not at issue in this action. Plaintiff never became a registered customer of DraftKings.com and never used Defendant's gambling website or services. Further, Plaintiff makes no claim to enforce any of the provisions of the Terms of Use (or any other alleged contract with Defendant) nor does she allege that she is entitled to any benefits flowing from any contractual term allegedly entered into with Defendant. Moreover, the Terms of Use expressly state that there shall be no third-party beneficiaries to its Terms; thus, DraftKings cannot claim that Plaintiff is somehow bound to the Terms of Use under any contractual third-party beneficiary legal theory. As a result, DraftKings' Terms of Use and/or any other alleged contracts with its betting customers are irrelevant to this Complaint.

### E. DraftKings' Promotion and Operation of Gambling and Unlawful Lottery Activity in Tennessee Causes Plaintiff's Spouse to Lose $46,440.00.

26. Through Defendant's advertising and promotion of its gambling website www.DraftKings.com in Tennessee, Plaintiff's spouse, Kenneth Miller, learned of and began to gamble on said website. Regrettably, Plaintiff's spouse developed an addiction to gambling on DraftKings.com. Between January 1, 2015 through April 6, 2015, Plaintiff delivered money to DraftKings which was lost upon a game or wager or lottery. (Plaintiff's spouse made no further

9

bets with Defendant after April 6, 2015). The total net loss incurred by Plaintiff's spouse during this time period is exactly $46,440.00. Under Tennessee law, only net losses may be recovered by Plaintiff. *See, Dunn v. Bell*, 85 Tenn. 581, 4. S.W. 41 (Tenn. 1886).

27. Defendant's unlawful activities in Tennessee have directly and proximately caused Plaintiff's spouse to lose $46,440.00 in gambling and illegal lottery contests. This financial loss has been difficult to bear for Plaintiff, who is currently pregnant with her second child. As a result, Plaintiff has brought this action against Defendant, for the use and benefit of herself, or alternatively, her minor child, Kinison Miller, to recover the net losses incurred by her spouse in the total amount of $46,440.00.

V.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF TENN. CODE ANN. § 29-19-105 - UNLAWFUL GAMBLING OR WAGERING PROMOTION, MANAGEMENT AND OPERATION

28. Plaintiff incorporates all allegations contained in the preceding paragraphs as if fully set forth fully herein.

29. TENN. CODE ANN. § 29-19-104 provides:

> "Any person who has paid any money, or delivered anything of value, lost upon any game or wager, may recover such money, thing, or its value, by action commenced within ninety (90) days from the time of such payment or delivery."

30. TENN. CODE ANN. § 29-19-105 provides:

> "Any other person may, after the expiration of the ninety (90) days, and within twelve (12) months thereafter, recover the amount of such money, thing, or its value, by action for the use of the spouse; or, if no spouse, the child or children; and, if no child or children, the next of kin of the loser."

31. Plaintiff Erica Miller's spouse, Kenneth Miller, delivered money to DraftKings which was lost upon a game or wager, during the time period of January 1, 2015 through April 6,

10

2015. Pursuant to TENN. CODE ANN. § 29-19-105, Plaintiff has the right to bring this action for the use or benefit of herself (or alternatively, her minor child) because, as alleged above, DraftKings' activities in Tennessee constitute "gambling" as defined under TENN. CODE ANN. § 39-17-501(1), which is against public policy and unlawful. Because DraftKings maintained and operated these gambling contests, it is liable as a gambling operator. *See, Pickard v. Berryman*, 142 S.W.2d 764 (Tenn. Ct. App. 1939)(ruling that evidence showing defendant controlled or operated gambling room was sufficient to hold defendant liable for gambling losses incurred by minor's father in games conducted by others). The net amount of Plaintiff's losses and the total monetary amount she seeks from Defendant, exclusive of interest and costs, is $46,440.00

### COUNT II – VIOLATION OF TENN. CODE ANN. § 29-19-105 - UNLAWFUL PROMOTION AND OPERATION OF A LOTTERY

32. Plaintiff Grace Walls incorporates all allegations contained in the preceding paragraphs as if fully set forth fully herein.

33. As alleged above, DraftKings' gaming and operations constitute a lottery under TENN. CODE ANN. § 39-17-501(5), which defines a "lottery" as "the selling of anything of value for chances on a prize or stake."

34. Article XI, Section 5 of Tennessee's Constitution expressly forbids lotteries unless they are "state" run and authorized lotteries for educational purposes. As a result, the Tennessee Constitution expressly bars the lotteries that were created, managed and conducted by DraftKings.

35. Lotteries are a form of gambling as set forth in TENN. CODE ANN. § 39-17-501. Further, lotteries constitute "any game or wager" as set forth in TENN. CODE ANN. § 29-10-104.

36. Plaintiff Erica Miller's spouse, Kenneth Miller, delivered money to DraftKings which was lost upon a game or wager, during the time period of January 1, 2015 through April 6,

11

2015. Pursuant to TENN. CODE ANN. § 29-19-105, Plaintiff has the right to bring this action for the use or benefit of herself (or alternatively, her minor child) because, as alleged above, DraftKings' gaming contest in Tennessee constitute "lotteries" as defined under TENN. CODE ANN. § 39-17-501(5), which are against public policy and unlawful under Tennessee law. Because DraftKings maintained and operated these illegal lotteries, it is liable as an illegal lottery operator. *See, Pickard v. Berryman*, 142 S.W.2d 764 (Tenn. Ct. App. 1939)(ruling that evidence showing defendant controlled or operated gambling room was sufficient to hold defendant liable for gambling losses incurred by minor's father in games conducted by others). ). The net amount of Plaintiff's losses and the total monetary amount she seeks from Defendant, exclusive of interest and costs, is $46,440.00.

## VII.

## **PRAYER FOR RELIEF**

WHEREFORE, the named Plaintiff Erica Miller, for the use and benefit of herself or, alternatively, for her minor child, Kinison Miller, demand a Judgment against Defendant DraftKings, Inc. on each Count of the Complaint and the following relief:

1. Issue service of process and serve the Defendant;

2. Empanel a jury to try this matter for all issues so triable;

3. Grant any reasonable request to Amend Plaintiff's Complaint to conform to the discovery and evidence obtained in this action;

4. Find that Defendant has violated TENN. CODE ANN. § 29-19-105 and award Plaintiff compensatory damages, exclusive of interest and cost, in the total amount of $46,440.00;

5. Award pre-and post-judgment interest in the amount of 10% per annum pursuant to TENN. CODE ANN. § 47-14-123 in amount according to the proof at trial;

12

6. Award costs and expenses incurred in this action pursuant to Rule 54 of the Tennessee Rules of Civil Procedure;

7. Grant the Plaintiff such further relief as the Court may deem just and proper.

Respectfully submitted,

*[signature]*

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email: fwaston@watsonburns.com
Email: bburns@watsonburns.com
www.watsonburns.com

*Counsel for Plaintiff Erica Miller, for the use and benefit of herself or, alternatively, her minor child, Kinison Miller*

13