# EXHIBIT C



FILED
NOV 06 2015
CIRCUIT COURT CLERK
BY _____ D.C.

IN THE CIRCUIT COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

ADAM WALLS, on behalf of
himself and all similarly
situated persons, and
GRACE WALLS, on behalf of
herself and all similarly
situated persons,

    PLAINTIFFS,

v.

DRAFTKINGS, INC., a foreign corporation

    DEFENDANTS.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. CT-004631-15

DIV. S

**CLASS ACTION COMPLAINT
FOR  RECOVERY OF GAMBLING AND
WAGERING LOSSES PURSUANT TO
TENN. CODE ANN. § 29-19-104 & 105,
PUNITIVE DAMAGES UNDER
TENNESSEE COMMON LAW,
DECLARATORY JUDGMENT
PURSUANT TO TENN. CODE ANN. § 29-14-
103 & 104, AND FOR TEMPORARY AND
PERMANENT INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

TO THE HONORABLE CIRCUIT COURT JUDGE:

Plaintiff Adam Walls, on behalf of himself and on behalf of all other similarly situated

persons, and Plaintiff Grace Walls, on behalf of herself and on behalf of all other similarly

situated persons, by and through their designated attorneys, and for their Class Action Complaint

allege as follows:  All allegations in this Complaint are based upon the investigation of counsel,

except the specific allegations pertaining to the named Plaintiffs, which are based upon personal

knowledge. As of the date of this Complaint, no discovery has been conducted. As a result, it is likely that once the discovery process is underway, the named Plaintiffs will seek leave to amend this Complaint to add new factual allegations, new claims and/or new parties.

I.

## NATURE OF THE ACTION

1.     This is class action brought on behalf of Tennessee residents for (i) Recovery of Gambling and Wagering Losses pursuant to TENN. CODE ANN. § 29-19-104 & 105, (ii) Declaratory Judgment pursuant to the Tennessee Declaratory Judgment Act, TENN. CODE ANN. § 29-14-103, (iii) Temporary and Permanent  Injunctive Relief under Rule 65 of the Tennessee Rules of Civil Procedure and (iv) Punitive Damages in order to remedy Defendant's wholesale promotion of (and profiting from) gambling, wagering and illegal lotteries in Tennessee in violation of express Tennessee statutory law and Tennessee's Constitution.

II.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action by virtue of TENN. CODE ANN. § 16-10-101 *et seq.*

3.     This Court has personal jurisdiction over Defendant DraftKings, Inc., pursuant to TENN. CODE ANN. §§ 20-2-214(1) and (2) and 20-2-223(1), (3) and/or (4) on the grounds that the claims asserted against it arise from its transaction of business within Tennessee and on the grounds that it has committed tortious acts within Tennessee.  Furthermore, Defendant DraftKings, Inc.'s contacts and actions directed toward Tennessee warrant the exercise of personal jurisdiction pursuant to TENN. CODE ANN. § 20-2-225(2).

4.     Venue is proper in this judicial district pursuant to TENN. CODE ANN. § 20-4-

2

101(a) on the grounds that the cause of action arose in Shelby County, Tennessee. Venue is also proper in this judicial district pursuant TENN. CODE ANN. § 16-11-115(3) and (4) on the grounds that this county is location where the services and/or activities were rendered.

## III.

## THE PARTIES

5.     Plaintiff Adam Walls (hereinafter referred to as "Plaintiff Adam Walls") is an individual resident of Tennessee and a proposed representative of a class of Tennessee residents who, within ninety (90) days preceding the filing of this Class Action Complaint to the present, delivered money to Defendant DraftKings, Inc. in order to gamble or place wagers on the on-line sports betting site known as "DraftKings.com" and who sustained a monetary loss.

6.     Plaintiff Grace Walls (hereinafter referred to as "Plaintiff Grace Walls") is an individual resident of Tennessee and the spouse of Plaintiff Adam Walls. Plaintiff Grace Walls is a proposed representative of a class of persons who are the spouses (or if no spouse, the child or children; and if no child or children, the next of kin as set forth in to TENN. CODE ANN. § 29-19-105) of those persons who are residents of Tennessee and who suffered losses by paying money or delivering anything of value to Defendant DraftKings, Inc. within the time period of the last ninety-one (91) days through twelve (12 ) months preceding the filing of this class action complaint.

7.     Defendant DraftKings, Inc. (hereinafter referred to as "DraftKings") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 376 Boylston Street, Suite 501, Boston, Massachusetts 02116-3825. Service of process can be obtained on DraftKings through its registered agent for service of process, Jason Robins, located at 376 Boylston Street, Suite 501, Boston,

3

Massachusetts 02116-3825.

IV.

**FACTUAL ALLEGATIONS**

A.   **Summary of Class Allegations**

8.     Defendant DraftKings operates a website known as "DraftKings.com" which offers daily and weekly fantasy sports gambling contests for cash prizes in major professional sports, such as the National Football League, the National Basketball Association, the National Hockey League and Major League Basketball as well as in college football and basketball. Specifically, acting like any Las Vegas sports "bookie," DraftKings provides a forum where its customers can make propositional wagers on the outcomes of the actual performance of specific athletes and sports teams on a daily basis, charging a commission or "rake" on all wagers made and, at times, risking its own money in these wagers.

9.     Because DraftKings' customers are betting on the outcome of athletic feats achieved by sports teams and players over which they have no control, DraftKings' activities constitute the unlawful operation of gambling activities and illegal lotteries within the State of Tennessee. Regardless of the alleged amount of "skill" that DraftKings attributes to the gaming that it promotes, Tennessee law expressly defines "gambling" to mean "risking anything of value for a profit whose return is to any degree contingent on chance, or any games of chance associated with casinos, including, but not limited to, slot machines, roulette wheels and the like." *See*, TENN. CODE ANN. § 39-17-501(1)(emphasis added). As a result, DraftKings has clearly engaged in gambling in Tennessee, which is expressly prohibited under Tennessee law.

10.     Further, by charging fees for a chance to win the gaming contests promoted by it (and at times risking its own assets to cover such contests), DraftKings has operated an illegal lottery in Tennessee. Under Tennessee law, a "lottery" means "the selling of anything of value

4

for chances on a prize or stake." TENN. CODE ANN. § 39-17-501(5). Again, then, regardless of the alleged degree of skill that it attributes to the gaming contest created and promoted by DraftKings, DraftKings has engaged in the operation of an illegal lottery in Tennessee (which expressly prohibited by Tennessee law and Article XI, Section 5 of Tennessee's Constitution) because chance is clearly an element affecting the outcome in these contests.

**B.    The Gaming Contests Created, Promoted and Operated by DraftKings Clearly Involve the Risk of Monetary Sums for a Profit Whose Return is to "Any Degree Contingent Upon Chance."**

11.    DraftKings has created an on-line betting website by devising a game that awards points based upon the performance of various professional and college athletes and teams in specific games on specific days. DraftKings charges an entry fee and then accepts wagers from bettors for these sporting event contests, from which it deducts a commission or "rake" in an amount of approximately 9%.

12.    With respect to each sporting event contest, DraftKings determines in advance of each contest which athletes and sport teams its betting customers can select to bet on and assigns a "handicap" (i.e., similar to a betting point spread) based upon the perceived potential of these actual athletes and teams to score the points. The charging of entries fees and a commission on the dollars wagered by its bettors is the primary basis of DraftKings' revenues; thus, the revenues to DraftKings largely depend upon the price of the entry fee for each contest as well as the total dollars wagered by the bettors in each contest.

13.    However, DraftKings also frequently guarantees a certain amount will be paid in prize pool winnings for a given sporting contest and, when necessary, covers the difference for the bettors between the guaranteed prize amount and the sum total of entry fees and/or total amounts wagered. The difference between the entry fees and amounts wagered and the guaranteed prize money is known as the "overlay." In situations where an overlay is needed

5

from DraftKings, DraftKings risks its own assets in the gambling ventures it promotes and, thus, has a significant incentive to attract as many bettors as possible in order avoid paying out its own money to cover the overlay.

14.     Once bettors on DraftKings' website have wagered their sums by selecting a given athlete or team, the bettor has no ability to control the outcome of the betting contest. Specifically, DraftKings' bettors have no ability to control how many points their selected athlete or teams will receive from the actual athlete's or team's performance. Instead, only the actual athlete players and teams in the underlying sporting events control their own performances, and even then, these actual athlete and teams are subject to a number of chance variables, such as "bad" officiating, illegal contact, sickness, injury, weather conditions, and any number of other variables well beyond the actual athlete or sporting team's own control.

15.     As a result, after DraftKings bettors place their bet by setting their final lineups, they have no ability to influence the outcome of the actual sporting event game. At that point, the bettors wait to see what happens based upon the performance of the actual players and teams selected.

16.     DraftKings erroneously claims that the dominant factor for successful betting through its website is the level or amount of "skill" employed by its customers in best predicting which athletes and teams will score the most points. DraftKings, however, eliminates almost the entire element of skill by establishing a handicap (similar to a point spread) for the limited number of athletes it determines can be used for a particular wagering event. By establishing a "spread" for each athlete and limiting the number of athletes the bettors can use, bettors are engaging in a gambling scheme predominately based upon chance. Indeed, Jason Robins, the Chief Executive Officer of DraftKings, stated on Reddit.com (an on-line fantasy sports betting blog) that the concept of DraftKings.com is "almost identical to a casino."

6

17. Regardless of whether the gaming scheme concocted by DraftKings is characterized as predominately one of "skill" or "chance," however, it is well established under Tennessee law that DraftKings is engaged in the promotion and operation of a gambling enterprise because its activities easily encompass "risking anything of value for a profit whose return is to any degree contingent on chance..." as defined TENN. CODE ANN. § 39-17-501(1). Thus, unlike other states' laws that define gambling to be only those activities in which chance predominates, no such analysis is applicable under Tennessee law -- where any degree of chance is involved, gambling is established.

18. Tennessee Attorney Generals have consistently ruled that any gaming device like that concocted by DraftKings is "gambling" when any degree of chance is present in the game. *See*, Op. Tenn. Att'y. Gen. No. 05-159 (Legality of Texas Hold' Em Poker Tournaments with Jackpot Price, Oct. 14, 2005)(ruling that poker tournaments charging an admission fee to play "Texas Hold' Em" for a chance to win a prize constituted "gambling" as defined under TENN. CODE ANN. § 39-17-501(1) regardless of the skill involved and was unlawful); Op. Tenn. Att'y. Gen. No. 06-046 (Legality of Leasing Equipment for and Conducting Poker Tournaments, Mar. 10, 2006)(ruling that leasing equipment for and conducting poker tournaments that charge an admission fee to play "Texas Hold' Em" while being designated "for entertainment purposes only" constitutes "gambling" in Tennessee and is unlawful); Op. Tenn. Att'y. Gen. Opinion No. 99-084 (Legality of Fishing Tournament Wherein Entrants Pay Fees With an Opportunity to Receive Cash and Other Prizes, Apr. 5, 1999)(holding that fishing tournament in which participants must pay entry fees for possibility to receive cash and other prizes for catching specifically designated fish was "gambling" despite skill involved because it involve a degree of chance).

7

**C.**    **The Gaming Contests Created, Promoted and Operated by DraftKings Also Clearly Constitute an Illegal Lottery.**

19.      Based upon the facts alleged herein, DraftKings also promotes, operates and manages an illegal lottery in violation of Tennessee's Constitution and Tennessee statutory law.

20.      Pursuant to TENN. CODE ANN. § 39-17-501(5), a "lottery" means "the selling of anything of value for chances on a prize or stake." The three elements of a lottery are: consideration, prize and chance. As alleged above all three elements are present with respect to DraftKings's gaming. First, Plaintiff and all bettors pay money to DraftKings for the ability to participate in the gaming contests. Second, Plaintiff and all bettors are offered a monetary prize which, if won, would greatly exceed the amount wagered and paid to DraftKings.

21.      Lastly, there clearly is an element of chance with respect to DraftKings' gaming website. Once again, Tennessee Attorney Generals and Tennessee law holds that it is the particular character of the game -- and not the skill or lack of skill of an individual participant that determines whether the game at issue is one of chance or skill. *See*, Op. Tenn. Att'y. Gen. No. 05-159 (Legality of Texas Hold'em Poker Tournaments with Jackpot Price, Oct. 14, 2005)(ruling that poker tournaments charging an admission fee to play "Texas Hold'Em" for a chance to win a prize constituted a "lottery" as defined under TENN. CODE ANN. § 39-17-501(5) despite the alleged skill involved in playing live poker); Op. Tenn. Att'y. Gen. Opinion No. 94-127 (Video Poker Machines as Lotteries, Nov. 1, 1994)(holding that video poker, although it involves skill, is a game of chance and hence a lottery).

22.      As alleged above, DraftKings' bettors can acquire and exercise the all the knowledge in the world as to which actual athlete and team may a better performer over other athletes and teams but this skill (while it may increase the odds of winning -- though studies

8

show that it does not) ultimately does not determine the outcome -- instead, it is only the actual athlete and sporting team that have any semblance of control of the actual outcome, and even these actual sporting participants are subject to chance. DraftKings' gambling scheme clearly involve a significant degree of chance because an individual athlete's performance will always be affected by material elements of chance that affect scoring and winning outcomes including variables such as player injury, player error, weather conditions, controversial officiating, suspension, or other off field circumstances and other conditions well beyond the control of the actual athlete or team. DraftKings' bettors have no measure of control over all of the variables that affect the performance of the college and professional athletes that they select, and, thus, DraftKings has, in addition to engaging in gambling, promoted and conducted an illegal lottery in Tennessee.

### D. DraftKings' Purported On-Line Contractual Terms are Void as a Matter of Law.

23.     TENN. CODE ANN. § 29-19-101 provides:

> "All contracts founded, in whole or in part, on a gambling or wagering consideration, shall be void to the extent of such consideration."

*See*, TENN. CODE ANN. § 29-19-101.

24.     Additionally, TENN. CODE ANN. § 39-17-501(1) provides that "Gambling is contrary to the public policy of this State ..." Under Tennessee law, then, "when a contract is void, the law treats it as if it never came into existence." *Isbell v. Hatchett*, 2015 Tenn. App. LEXIS 81, *20-22 (Tenn. Ct. App. Feb. 23, 2015).

25.     DraftKings' website contains a "Terms of Use" section which DraftKings employs to purportedly bind its customers before they are permitted to utilize and bet on its website. As a result, this provision is part and parcel of the gambling and illegal lottery contracts entered into by Plaintiff Adam Walls and the Class Members he represents (as defined in

9

paragraph 29 below). Among other things, DraftKings claims that this contract binds Plaintiff and the Class Members who have paid to bet on its site to asserting their claims in arbitration and prohibits class action claims.

26.     However, because the Terms of Use constitutes a contract founded in whole or in part, on gambling or wagering, all of DraftKings' purported contractual provisions, including those calling for binding arbitration and a class action waiver, are void, against public policy and of no effect.

27.     Furthermore, with respect to Plaintiff Grace Walls and the Class Members she represents (as defined in paragraph 30 below), Plaintiff Grace Walls and these Class Members never entered into any contractual terms with DraftKings and, therefore, are not bound by the sham arbitration and class action waiver clauses appearing in DraftKings' Terms of Use.

28.     Within ninety (90) days of the filing of this Class Action Complaint, Plaintiff Adam Walls delivered money to DraftKings which was lost upon a game or wager within the ninety (90) days of said delivery. Within the time period of ninety-one (91) days to twelve (12) months preceding the filing of this Class Action Complaint, Plaintiff Adam Walls has also delivered money to DraftKings which was lost upon a game or wager within the ninety-one (91) days to twelve (12) months of said delivery. Plaintiff Grace Walls is the spouse of Plaintiff Adam Walls.

## V.

### CLASS ACTION ALLEGATIONS

29.    **The DraftKings Gambler Class.**  Plaintiff Adam Walls brings this action as a

Class Action pursuant to Rules 23.01 and 23.02(1), (2) and/or 23.02(3) of the Tennessee Rules of

Civil Procedure on behalf of:

> Plaintiff Adam Wall, and all of similarly situated persons
> who are residents of Tennessee and who suffered losses by
> paying money or delivering anything of value to DraftKings
> within the last ninety (90) days preceding the filing of this class
> action complaint to the present.
>
> Excluded from the Class is the named Defendant, its agents,
> affiliates, and employees, the Judge assigned to this matter and
> his or her staff.

The above defined Class is hereinafter referred to as the "DraftKings Gambler Class."

30.    **The DraftKings Family Use Class.**  Plaintiff Grace Walls brings this action as a

Class Action pursuant to Rules 23.01 and 23.02(1), (2) and/or 23.02(3) of the Tennessee Rules of

Civil Procedure on behalf of:

> Plaintiff Grace Walls, and all of similarly situated persons,
> who are the spouses (or if no spouse, the child or children; and if
> no child or children, the next of kin as set forth in to TENN. CODE
> ANN. § 29-19-105) of those persons who are residents of
> Tennessee and who suffered losses by paying money or
> delivering anything of value to DraftKings for the time period of
> the last ninety-one (91) days to twelve (12) months preceding the
> filing of this class action complaint.
>
> Excluded from the Class is the named Defendant, their
> agents, affiliates, and employees, the Judge assigned to this
> matter and his or her staff.

The above defined Class is hereinafter referred to as the "DraftKings Family Use Class."

31.    **Numerosity.**  The requirements of Rule 23.01(1) are satisfied in that there are too

11

many Class Members for joinder of all of them to be practicable. Upon information and belief there are thousands of Tennessee residents in both the DraftKings Gambler Class and the DraftKings Family Use Class. Thus, the two Classes are so numerous that joinder of all members in a single action is impracticable. The Class Members are readily identifiable from the information and records in Defendant's possession or control.

32.     **Commonality.** The claims of the two Classes raise numerous common issues of fact and law, thereby satisfying the requirements of Rule 23.01(2). These common legal and factual questions, which do not vary from one Class Member to another, and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited to, the following questions:

**Questions of Fact.**

(i)     What are the total monetary losses to the DraftKings Gambler Class?

(ii)    What are the total monetary losses to the DraftKings Family Use Class.

(iv)    Whether DraftKings intentionally or recklessly engaged wrongful conduct such as to warrant punitive damages.

**Questions of Law**

(i)     Whether the promotion and operation of FandDuel.com constitutes "gambling" as defined by TENN. CODE ANN. § 39-17-501(1).

(ii)    Whether the promotion and operation of FandDuel.com constitutes an illegal "lottery" as defined by TENN. CODE ANN. § 39-17-501(5).

(iii)   Whether declaratory relief should be granted to the Class Members pursuant to the Declaratory Judgment Act, TENN. CODE ANN. § 29-14-103 and 104 declaring the creation, management and operation of DraftKings.com as illegal under Tennessee law.

12

33. **Typicality**. The claims of the named Plaintiffs are typical of the unnamed Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23.01(3). For example, the named Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class Members were injured or damaged by the same wrongful practices in which Defendants engaged, namely the promotion of and operation of gambling and illegal lotteries in Tennessee, which are strictly prohibited in Tennessee.

34. **Adequacy of Representation.** The requirements of Rule 23.01(4) are satisfied in that the named Plaintiffs have sufficient stakes in the litigation to vigorously prosecute their claims on behalf of the Class Members and their interests are aligned with those of the two Classes. There are no defenses of a unique nature that may be asserted against the named Plaintiffs individually, as distinguished from the other members of the Class, and the relief sought is common to the Class. Plaintiffs do not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class, and has no conflict with any other member of the Class. Plaintiffs have retained competent counsel experienced in class action litigation, including consumer and financial services class actions, to represent him and the Class in this litigation.

35. **Declaratory Relief**. Alternatively, all of the requirements for Rule 23.02(1)(a) and (2) also are satisfied in that the Defendant's actions affected all Class Members in the same manner, making appropriate final declaratory relief with respect to the class as a whole. For example, Plaintiff seeks with respect to the class as a whole a declaration that the Class Members have been subjected to gambling and illegal lotteries in violation of Tennessee statutory law. *See*

13

*also, Olden v. LaFarge Corp.*, 383 F.3d 506,507 (6th Cir. 2004)(holding certification under Rule 23(b)(2) and (b)(3) was appropriate in property damage and personal injury damage environmental class action).

36.    **Predominance and Superiority.** Alternatively, all of the requirements for Rule 23.02(3) are satisfied in that class action treatment is superior to other available methods for the *fair and efficient adjudication of this controversy, because individual litigation of the claims of* all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely millions of dollars, the individual damages incurred by each Class Member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Individual members of the class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent or contradictory judgments while magnifying the delay and expense to all parties and to the court system resulting in multiple trials of the same factual issue and creating the possibility of repetitious litigation. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance of a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole.

14

37.    **Dispositive Adjudication.**    This class action also meets the criteria of Rule 23.02(1)(b) because adjudication of individual Class Members' claims would as a practical matter be dispositive of other Class Members not actual parties to this matter. Indeed, if Defendant DraftKings engaged in the promotion and operation of gambling and/or an illegal lottery with respect to the named Plaintiff, it will have also engaged in such unlawful conduct with respect to the Class Members as a whole. As a result, certification under Rule 23.02(1)(b) is appropriate. *See, American Heritage Apartments Inc v. The Hamilton County Water and Wastewater Treatment Authority,* No. E2014-00302-COA-R3-CV, 2015 Tenn. App. LEXIS 43 at *33 (Tenn. Ct. App. Jan. 30, 2015)(in class action asserting private right of action for violation of Tennessee statute control water charges to consumers, court affirmed class certification under Rule 23.02, noting that inconsistent adjudications warranted class certification).

38.    **Damages to the two Classes.**    At this time, although Plaintiffs reasonably anticipate that each Class has suffered millions of dollars in losses, Plaintiffs are unable to properly allege the specific compensatory damages suffered by the DraftKings Gambler Class and the DraftKings Family Use Class and will only be able to do so after proper class discovery is conducted. As a result, Plaintiffs have filed this action in the Circuit Court of Shelby County Tennessee, rather than in the United States District Court of Tennessee for the Western District pursuant to the Class Action Fairness Action ("CAFA"), 28 U.S.C. §1332(d), because it is unclear whether CAFA's $5 million amount in controversy requirement is satisfied with respect to both Classes, separately or as a whole. To the extent Defendant DraftKings seeks removal of this action under CAFA, Defendant DraftKings must establish to a legal certainty, *inter alia,* that the DraftKings Gambler Class and the DraftKings Family Use Class each separately involve an amount in controversy equal to or exceeding $5 million.

15

# VI.

## CAUSES OF ACTION

### COUNT 1 – VIOLATION OF Tenn. Code Ann. § 29-19-104 &105 - UNLAWFUL GAMBLING OR WAGERING PROMOTION, MANAGEMENT AND OPERATION

39.     Plaintiffs Adam Wall and Grace Wall incorporate all allegations contained in the preceding paragraphs as if fully set forth fully herein.

40.     Tenn. Code Ann. § 29-19-104 provides:

> "Any person who has paid any money, or delivered anything of value, lost upon any game or wager, may recover such money, thing, or its value, by action commenced within ninety (90) days from the time of such payment or delivery"

41.     Plaintiff Adam Walls and the members of the DraftKings Gambler Class paid money or delivered money or other things of value (namely the charging of credit against their credit cards) to DraftKings during the ninety (90) days preceding the filing of this Class Action Complaint which was lost upon a game or wager within the ninety (90) days of said payment or delivery.  The payment or delivery of said money or credit resulted in a loss to Plaintiff Adam Walls and the other members of the DraftKings Gambler Class for which DraftKings is obligated to return under Tenn. Code Ann. § 29-19-104 because, as alleged above, DraftKings' activities in Tennessee constitute "gambling" as defined under Tenn. Code Ann. § 39-17-501(1), which is against public policy and unlawful.

16

42.    TENN. CODE ANN. § 29-19-105 provides:

> "Any other person may, after the expiration of the ninety (90) days, and within twelve (12) months thereafter, recover the amount of such money, thing, or its value, by action for the use of the spouse; or, if no spouse, the child or children; and, if no child or children, the next of kin of the loser"

43.    Within the ninety-one (91) days to twelve (12) months preceding the filing of this Class Action Complaint, Plaintiff Adam Walls also delivered money to DraftKings which was lost upon a game or wager within the ninety-one (91) days to twelve (12) months of said delivery. Plaintiff Grace Wall is the spouse of Plaintiff Adam Wall and, therefore, has the right to bring an  action on behalf of herself and the DraftKings Family Use Class under TENN. CODE ANN. § 29-19-105 because, as alleged above, DraftKings' activities in Tennessee constitute "gambling" as defined under TENN. CODE ANN. § 39-17-501(1), which is against public policy and unlawful.

## COUNT II – VIOLATION OF TENN. CODE ANN. § 29-19-104 & 5 - UNLAWFUL PROMOTION AND OPERATION OF A LOTTERY

44.    Plaintiffs Adam Wall and Grace Wall incorporate all allegations contained in the preceding paragraphs as if fully set forth fully herein.

45.    As alleged above, DraftKings' gaming and operations constitute a lottery under TENN. CODE ANN. § 39-17-501(5), which defines a "lottery" as "the selling of anything of value for chances on a prize or stake."

46.    Article XI, Section 5 of Tennessee's Constitution expressly forbids lotteries unless they are "state" run and authorized lotteries for educational purposes.  As a result, the Tennessee Constitution expressly bars the lotteries that were created, managed and conducted by DraftKings. Further, pursuant to TENN. CODE ANN. § 39-17-506, lotteries involving ten thousand dollars ($10,000.00) or more constitute a Class E felony in Tennessee.

17

47.     Lotteries are a form of gambling as set forth in TENN. CODE ANN. § 39-17-501.

Further, lotteries constitute "any game or wager" as set forth in TENN. CODE ANN. § 29-10-104.

Plaintiff Adam Walls and the members of the DraftKings Gambler Class paid money or

delivered money or other things of value (namely the charging of credit against their credit

cards) to DraftKings during the ninety (90) days preceding the filing of this Class Action

Complaint which was lost upon a game or wager within the ninety days (90) of said payment or

delivery. The payment or delivery of said money or credit resulted in a loss to Plaintiff Adam

Walls and the other members of the DraftKings Gambler Class for which DraftKings is obligated

to return under TENN. CODE ANN. § 29-19-104 because, as alleged above, DraftKings' activities

in Tennessee constitute "lotteries" as defined under TENN. CODE ANN. § 39-17-501(5), which are

against public policy and Tennessee law.

48.     Within the time period of ninety-one (91) days through twelve (12) months

preceding the filing of this Class Action Complaint, Plaintiff Adam Walls also delivered money

to DraftKings which was lost upon a game or wager within this same time period.  Plaintiff

Grace Wall is the spouse of Plaintiff Adam Wall and, therefore, has a right to bring action on

behalf of herself and the DraftKings Family Use Class under TENN. CODE ANN. § 29-19-105

because, as alleged above, DraftKings' gaming contest in Tennessee constitute "lotteries" as

defined under TENN. CODE ANN. § 39-17-501(5), which are against public policy and unlawful

under Tennessee law.

## COUNT III – PUNITIVE DAMAGES

49. Plaintiffs Adam Wall and Grace Wall incorporate all allegations contained in the preceding paragraphs as if fully set forth fully herein.

50. TENN. CODE ANN. § 39-17-502 provides that the offence of gambling is a Class C misdemeanor. TENN. CODE ANN. § 39-17-503 provides that the promotion of gambling is a Class B misdemeanor; "gambling promotion" occurs when anyone "knowingly induces or aids another to engage in gambling, and: (1) Intends to derive or derives an economic benefit other than personal winnings from the gambling; or (2) Participates in the gambling and has, other than by virtue of skill or luck, a lesser risk of losing or greater chance of winning than one (1) or more of the other participants." *See*, TENN. CODE ANN. § 39-17-503(a). As alleged above, DraftKings has induced Plaintiff Adam Walls and the Class Members to gamble and it derived an economic benefit other than personal gambling winnings.

51. TENN. CODE ANN. § 39-17-504 provides that aggravated gambling promotion is a Class E felony; aggravated gambling promotion occurs when one "knowingly invests in, finances, owns, controls, supervises, manages or participates in a gambling enterprise [meaning two (2) or more persons regularly engaged in gambling promotion]." *See*, TENN. CODE ANN. § 39-17-504(a) & (b). As alleged above. DraftKings' conduct and activities constitutes aggravated gambling promotion.

52. Upon information and belief, Defendant DraftKings acted intentionally and/or recklessly with respect to its wrongful conduct because it was aware, but consciously disregarded, the substantial and unjustifiable harm that they would cause to Plaintiffs and the Class Members for engaging in gambling and illegal lotteries. As a result, Defendant's actions

19

and omissions constituted a reckless and/or gross deviation from the standard of care that an ordinary person would exercise under the circumstances.

53. With respect to the applicable factors that may be addressed by the fact finder when determining punitive damages, Plaintiff would allege as follows:

(i) Defendant's financial affairs, financial condition and net worth range in the multimillions of dollars;

(ii) The nature and reprehensibility of Defendant's wrongdoing is substantial because Defendant have intentionally or recklessly abused and taken advantage of a class of persons who are generally in financial straits and are low income consumers;

(iii) Defendant was aware of the harm that could and would be caused to Plaintiff and the Class Members with respect to their wrongful conduct;

(iv) Defendant's misconduct spanned several years;

(v) In order to recover their losses, Plaintiffs and the Class Members will incur substantial costs;

(vi) Defendant profited significantly from the unlawful legal fees, and a significant punitive award is the only method to deter future similar misconduct.

54. Indeed, upon information and belief, Defendant DraftKings has known that its gambling and lottery activities in Tennessee are strictly illegal. For example, in or about Octoebr 2015, DraftKings hired the following Tennessee lobbyists: David McMahan, Anna Richardson,

Caroline Straight and Beth Winstead for the express purpose of attempting to lobby the Tennessee General Assembly to change the laws of Tennessee which expressly prohibit gambling and non-state run lotteries in Tennessee. Based upon the above allegations and factors, Plaintiff and the Class Members would respectfully request entry of a punitive award in an amount to be determined by the trier of fact.

## COUNT IV– DECLARATORY JUDGMENT PURSUANT TO Tenn. Code Ann. § 29-14-103 and 104

55.     Plaintiffs Adam Wall and Grace Wall incorporate all allegations contained in the preceding paragraphs as if fully set forth fully herein.

56.     Pursuant to the Declaratory Judgment Act, Tenn. Code Ann. § 29-14-103 and 104, Plaintiff Adam Walls and the DraftKings Gambler Class request a judicial declaration that any contractual terms allegedly entered into by them with DraftKings are void as against public policy and Tennessee law.

57.     Further, Tenn. Code Ann. § 29-14-103 and 104, Plaintiffs Adam Walls, the DraftKings Gambler Class, Plaintiff Grace Walls and the DraftKings Family Use Class request a judicial declaration that DraftKings' activities alleged herein violate Tennessee's Constitution and Tennessee statutory law which prohibits gambling and lotteries.

## COUNT V– TEMPORARY AND PERMANENT INJUNCTIVE RELIEF TO PROHIBIT DEFENDANT'S UNLAWFUL CONDUCT

58.     Plaintiffs Adam Wall and Grace Wall incorporate all allegations contained in the preceding paragraphs as if fully set forth fully herein.

59.     Plaintiffs Adam Walls, the DraftKings Gambler Class and Plaintiff Grace Walls and the DraftKings Family Use Class request a temporary injunction to stop Defendant's patent violation of Tennessee law. Plaintiffs and thousands of absent Class Members will continue to

21

suffer irreparable injury and damages if Defendant is not immediately restrained from operating its illegal gambling and lottery operations. Defendant has shown a complete disregard and refusal to comply with the Tennessee's Constitution and Tennessee statutory law and, as such, the illegal activities of the Defendant are likely to continue unless this Honorable Court issues a Temporary Injunction. However, in cases where a violation of a statute is alleged, as in this case, a showing of irreparable injury is not required. See *U.S. vCaribbean Ventures, Ltd.,* 387 F.Supp. 1256, 1257 (D.N.J. 1974) (citing *C.A.B. v Donaldson Line (Air Services) Limited,* 343 F.Supp. 1059 (S.D.N.Y. 1972); *C.A.B. v Modern Air Transport, Inc.,* 81 F.Supp. 803, 806 (S.D.N.Y. 1949), aff'd, 179 F.2d 622 (2d Cir. 1950).

60. Plaintiffs allege that there is a substantial likelihood that Plaintiffs will prevail on the merits of this matter and that the threatened harm to the Plaintiffs, absent Class Members and to the public at large is substantial. As a result, these factors outweigh any harm that a Temporary Restraining Order and Preliminary Injunction would inflict on the Defendant because it has no reasonable expectation of protection from its own illegal activities and statutory violations.

61. Gambling has a very negative impact on individuals and society. The compulsion to gamble at any cost leads to difficulties which affect employment, quality of life, family relationships and mental and physical health. It is estimated that for every problem gambler there are at least ten (10) family members , friends and colleagues that are directly affected by such negative behavior. Tennessee has a strong public policy in favor of protecting Tennessee residents and families from such illegal activities. The issuance of a Temporary Injunction would not adversely affect the public interest but rather protects the public interest and supports the strong public policy of protecting the public from the vices of gambling for which the

22

Tennessee Constitution and statutes cited herein (that the Defendant is violating) were designed to protect in the first place.

62.     Plaintiffs ask this Honorable Court to set the request for a *Temporary Restraining Order* and *Preliminary Injunction* for hearing at the earliest possible time and, after the hearing, issue a preliminary injunction against the Defendant preventing it from continuing to operate illegally in the State of Tennessee.

63.     Plaintiffs further request this Honorable Court to grant a permanent injunction against Defendant enjoining it forever from its illegal conduct in the State of Tennessee.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, the named Plaintiffs and the Class Members demand judgment against Defendant DraftKings, Inc. on each Count of the Complaint and the following relief:

1.     Issue service of process and serve each Defendant;

2.     Empanel a jury to try this matter;

3.     Issue an Order certifying that this action may be maintained as a Class Action, appointing Plaintiff and his counsel to represent the Class, and directing that reasonable notice of this action be given by Defendants to the Class Members;

4.     Grant any reasonable request to Amend Plaintiff's Class Action Complaint to conform to the discovery and evidence obtained in this class action;

5.     Award each plaintiff Class Member compensatory damages in an amount to be determined by the trier of fact but not less than $10,000,000.00 in the aggregate for each Class defined herein ;

23

6.   Award punitive damages against Defendant DraftKings, Inc in an amount to be determined by the trier of fact but not less than $10,000,000.00 in the aggregate for each Class defined herein ;

7.   Judicially declare, pursuant to TENN. CODE ANN. § 29-14-103 and 104, that any contractual terms allegedly entered into by Plaintiff Adam Walls and the DraftKings Gambler Class are void as against public policy and Tennessee law;

8.   Judicially declare, pursuant to TENN. CODE ANN. § 29-14-103 and 104, that DraftKings' activities alleged herein violate Tennessee's Constitution and Tennessee statutory law which prohibits gambling and lotteries;

9.   Enter a Temporary Injunction and a Permanent Injunction prohibiting DraftKings from further violating the Tennessee Constitution and Tennessee's laws which prohibit gambling and lotteries;

10.  Award pre-and post-judgment interest in the amount of 10% per annum pursuant to TENN. CODE ANN. § 47-14-123 in amount according to the proof at trial

11.  Award costs and expenses incurred in this action pursuant to Rule 54 of the Tennessee Rules of Civil Procedure;

12.  Grant the Plaintiffs and the Class Members their costs incurred in this litigation;

13.  Award pre-and post-judgment interest as provided by law in amount according to proof at trial; and

14.  Grant the Plaintiff Class Members such further relief as the Court may deem just and proper.

Respectfully submitted,

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email: fwaston@watsonburns.com
Email: bburns@watsonburns.com
www.watsonburns.com

*Counsel for Plaintiff Adam Walls, individually and
on behalf of the DraftKings Gambler Class (defined
above) and Plaintiff Grace Walls individually and
on behalf of the DraftKings Family Use Class
(defined above)*

25